United States District Court
Southern District of Texas
**ENTERED**
January 24, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Jeff Cook, | § § § |
| *Plaintiff,* | § § |
| | §  Civil Action No. 4:21-cv-03594 |
| v. | § § |
| Kilolo Kijakazi, Acting Commissioner of Social Security Administration, | § § § § |
| *Defendant.* | § § |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that found Plaintiff Jeff Cook ineligible for social security benefits, which was referred to the undersigned judge. Dkt. 4. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 15) and denying Cook's Motion for Summary Judgment (Dkt. 12).

## Background

Cook filed for social security benefits under Title II on March 23, 2020, claiming a disability onset date of July 31, 2014. R.14. Before filing for disability, Cook had worked in "personal protection" as a bodyguard for seventeen years. R.35. He allegedly stopped working because he was attacked

by his client's dogs and suffered significant injuries. *Id.* His claim was denied initially on June 19, 2020 and again upon reconsideration on September 16, 2020. R.14. Cook requested a hearing, which was held by telephone on June 30, 2021. R.28-59. After the hearing, the administrative law judge (ALJ) issued a decision denying Cook benefits. *See* R.14-23.

At the hearing, Cook testified that he had worked a series of personal protection jobs from 1996 to 2013. R.35-36. He also testified that he was terminated from his last position in 2014 because the injuries from the dog attack prevented him from being able to perform his duties. R.38. Those work duties included heavy lifting, specifically, lifting and bathing his client's Tibetan Mastiff dogs that weighed up to 250 pounds. R.34. After his injuries, Cook testified that he was limited to lifting about 20-25 pounds. R.42.

Cook's attorney asked him to describe his current limitations. Cook identified problems with his back, R.39, and his knees and lower extremities, R.40-43. He now uses braces on his knees and previously used a cane. R.43. Cook also testified about mental limitations that arose in 2019, after he struck his head while moving a Bowflex exercise machine. R.44. He claimed that he "tried everything" as treatment, but still experienced headaches, nausea, vomiting, loss of memory, and decreased concentration. R.44-45, 49.

On July 28, 2021, the ALJ issued an opinion finding that Cook was not disabled. R.14-23. At steps one and two, the ALJ found that Cook met the

insured status requirements under the Social Security Act and that he had not engaged in substantial gainful activity since his alleged onset date. R.16. At step three, the ALJ found that Cook suffered from the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, degenerative joint disease of the right shoulder, and headaches. R.17. But the ALJ further concluded that Cook's severe impairments did not meet or medically equal a limited impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. R.17-18.

The ALJ then determined that Cook had a residual functional capacity (RFC) to perform medium work, except that he could only "occasionally climb ladders, ropes or scaffolds" or "reach overhead with the dominant, right upper extremity." R.18. The RFC also limited Cook's work environment to "a noise level of moderate or less" and stated that he "can withstand occasional exposure to dangerous moving machinery or unprotected heights." *Id.* Given this RFC, the ALJ found that Cook could hold jobs that were available in the national economy, relying on the vocational expert's testimony that Cook could perform his past bodyguard work, as generally performed at a light exertional level. R.22. The ALJ thus found that Cook was not disabled. *Id.*

Cook appealed to the Appeals Council again but was unsuccessful. R.1-3. The Appeals Council's denial rendered the ALJ's November 2020 decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103,

106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a

whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

I.  **Legal Framework**

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner

5

"to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. <u>The ALJ's determination was supported by substantial evidence.</u>

Cook raises two arguments on appeal. First, he argues the ALJ did not fulfill her duty to review the entire record. Second, he argues that the ALJ's RFC did not account for all his limitations. Neither argument is meritorious, and substantial evidence supported the ALJ's opinion.

### A. The ALJ considered the entire record.

Cook first complains that the ALJ failed to consider all the evidence in the record. Dkt. 12 at 5-11. In particular, Cook argues that the ALJ ignored evidence of other impairments that are reflected in the record. *Id.* at 6. Those alleged impairments are (1) irritable bowel syndrome; (2) bilateral hip joint osteoarthritis; (3) right hand osteoarthritis; (4) depression; (5) traumatic brain injury; (6) post-concussive syndrome; (7) "post-consussional (sic) dizziness related to labyrinthine trauma"; and (8) anxiety. *Id.* at 6-7. Cook presents no argument as to why he believes the ALJ did not review or consider these potential impairments. *Id.* at 7. He nevertheless insists that "a different result would have ensued" if the ALJ had evaluated these impairments and provides several pages of bullet points and quotes from medical records that purportedly demonstrate Cook's additional impairments. *Id.* at 7-9. Such an attack on the ALJ's opinion is superficial and baseless.

6

> 1. Cook did not overcome the presumption that the ALJ reviewed the entire record.

As a preliminary matter, the ALJ need not cite each and every piece of medical evidence considered in order to prove that she fulfilled her duty to consider the entire record. *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam) (citing *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994), for the principle that ALJs need not articulate specific evidence that was weighed and rejected). Rather, when an ALJ has stated that she has considered all record evidence, a claimant must identify contrary evidence and reasons that provide a legitimate basis to question the ALJ's general statement. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (deferring to the ALJ's statement that he considered "all of the evidence," absent any reason or evidence to dispute it); *Parsons v. Saul*, 2020 WL 444468, at *3 (N.D. Tex. Jan. 13, 2020) (finding that "contrary evidence and reasons detailed below provide a legitimate basis to dispute the ALJ's general statement"), *report and recommendation adopted*, 2020 WL 434578 (N.D. Tex. Jan. 28, 2020).

Here, the ALJ repeatedly stated that she considered the entire record when making her findings and formulating Cook's RFC. R.16, R.18, R.22. To undermine this statement, Cook needed to do more than simply identify additional record evidence that supports a disability finding. But Cook only

7

points to the evaluation by Daniel Franc, M.D., Ph.D, providing several pages of bullet points and quotations of Dr. Franc's report, such as notes that Cook was struck by a Bowflex and "may have briefly lost consciousness" and that Cook "endorses ongoing dizziness" and "endorses difficulty with sleep." Dkt. 12 at 7-8. Cook also provides Dr. Franc's list of eight diagnoses. But beyond describing this report, Cook provides no analysis or reasoning. He simply asserts that the ALJ "failed to discuss any of his important findings." *Id.* at 9.

Cook's argument is unavailing for two reasons. First, the ALJ did discuss Dr. Franc's report, but found it unpersuasive because it "focused on causation" of the injuries by the Bowflex accident instead of "specific functional limitations." R.22. Second, Cook did not carry his burden of analyzing how this specific evidence demonstrates error by the ALJ—beyond the inaccurate conclusion that ALJ ignored the report. *See Brunson*, 387 F. App'x at 461.

> 2. <u>Cook argues that the ALJ failed to consider impairments that were not the basis of his disability claim.</u>

Cook's argument is also unavailing because he faults the ALJ for not considering evidence of severe impairments that Cook himself did not endorse when he filed for social security benefits. That is, Cook argues that a more thorough review of the evidence would have resulted in the ALJ finding additional impairments, even though Cook never based his disability claim on those impairments.

Of the eight impairments that Cook now claims the ALJ should have considered, only two (irritable bowel syndrome and traumatic brain injury) were included in Cook's March 26, 2020 disability report:

| **Impairments Listed on Cook's Benefits Application** | **Impairments Cook Argues Were Erroneously Omitted** |
|---|---|
| 1. *Traumatic brain injury* | 1. *Irritable bowel syndrome* |
| 2. Nerve damage in right arm | 2. Bilateral hip joint osteoarthritis |
| 3. 3 herniated discs in back | 3. Right hand osteoarthritis |
| 4. Torn meniscus in left knee | 4. Depression |
| 5. Blown right elbow | 5. *Traumatic brain injury* |
| 6. High blood pressure | 6. Post-concussive syndrome |
| 7. Torn ACL in knee and torn ligament in ankle | 7. Post-concussional (sic) dizziness related to labyrinthine trauma |
| 8. Sleep apnea | 8. Anxiety |
| 9. *Irritable bowel syndrome* | |
| 10. Vertigo | |

*Compare* R.219, *with* Dkt. 12 at 6-7 (emphasis added).

This discrepancy is significant. Cook effectively argues that the ALJ erred by failing to find him disabled due to severe impairments he did not allege—and only identified in summary, list format on appeal to this Court. The Court rejects this *post hoc* pivot, as Cook "is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured." *Heather H. v. Kijakazi*, 2021 WL 4138406, at *3 (S.D. Tex. Sept. 10, 2021). The fact that one medical record contains additional diagnoses neither expands his disability claim, nor gives rise to ALJ error—especially when Cook failed to assert disability based on those limitations. *See, e.g., Jorge v. Comm'r of Soc. Sec.*, 2020 WL 1233892, at *6 (S.D.N.Y. Mar. 13, 2020) (rejecting a claimant's

9

argument that the ALJ failed to consider her mental limitations because "[s]he did not apply for disability benefits for mental impairments and denied limitations caused by her mental health in her adult function report").

Cook's application speaks for itself, and he has neither acknowledged nor explained why his later-alleged impairments are different. In March 2020, *after* suffering the dog attack and Bowflex injury, Cook asserted only ten impairments as part of his benefits claim. R.218-25. Even at his hearing, Cook described only issues with his back, lower extremities, and mental capabilities—not his hips, hands, or digestive issues. R.39-42 (describing back and lower extremity issues), 43-49 (describing headaches, nausea, vomiting, loss of memory, and loss of focus). Cook thus had ample opportunity to explain the basis for his disability claim. He cannot alter his theories now.

In sum, Cook fails to identify a legitimate basis for doubting whether the ALJ properly considered the record evidence. Cook instead asks the Court to undertake its own determination of whether he should be classified as disabled for any reasons or diagnoses mentioned in the record, especially those listed by Dr. Franc. That is the type of *de novo* review courts must decline. *Brown*, 192 F.3d at 496. The ALJ weighed Cook's testimony, treatment records, and various medical opinions. She alone was entitled to resolve any conflicting evidence. *Perez*, 415 F.3d at 461; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (courts cannot "reweigh the evidence in the record, nor try issues de

10

novo, nor substitute [their] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision"). Cook's conclusory arguments provide no basis for disturbing the ALJ's findings.

### B. The ALJ did not err in omitting Cook's hypothetical absenteeism from his RFC.

Cook also argues that the ALJ failed to incorporate all of Cook's limitations in her RFC determination. Dkt. 12 at 11-13. To carry his burden, Cook must identify specific limitations that the RFC erroneously omitted. *See, e.g., Hanby v. Colvin*, 2015 WL 12551080, at *15 (S.D. Tex. Mar. 30, 2015) (rejecting complaint that the RFC omitted unspecified limitations, as the RFC was otherwise supported by substantial evidence), *Littinger v. Astrue*, 2010 WL 744245, at *6-7 (S.D. Tex. Feb. 26, 2010) (rejecting contention that the RFC failed to consider all the claimant's limitations when she neither identified the limitations nor cited the record); *Harmon v. Kijakazi*, 2021 WL 6930974, at *3 (W.D. Okla. Oct. 29, 2021) (collecting authority for same principle), *report and recommendation adopted*, 2022 WL 468603 (W.D. Okla. Feb. 15, 2022).

Instead, Cook identifies only one purported omission in the RFC: his need to be absent from work at least twice a month. Dkt. 12 at 12. Cook cites no record evidence indicating that his limitations would cause him to miss work regularly. *See id.* at 11-13. The only basis for this purported limitation is the vocational expert's testimony about a hypothetical worker's ability to

11

maintain employment if he were absent twice a month. *Id.* at 12 (quoting R.53). But an ALJ need not rely on a vocational expert's response to a hypothetical question if she finds that the medical evidence does not support the hypothetical conditions. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) ("Because she found objective medical evidence did not coincide with the hypothetical assumptions posed to the vocational expert, the ALJ reasoned the expert's opinion was immaterial.... [W]e find rejection of the expert testimony reasonable."). That is what happened here. The ALJ made no findings about Cook's ability to work consistent hours without being absent, and Cook did not cite any evidence supporting such a limitation. Accordingly, Cook has not shown that the ALJ erroneously omitted limitations from the RFC.

### C. The ALJ's decision was supported by substantial evidence.

Finally, the ALJ's decision was supported by substantial evidence, even if the Court were to construe Cook's arguments as a broad attack on the sufficiency of the record. For example, when concluding that Cook could perform work at a moderate exertional level, the ALJ noted, among other records, that Cook self-reported doing an hour of daily circuit training at the second-to-highest option (below only "vigorous" exercise) in March 2015. R.19 (citing R.1347). Cook self-reported doing this daily workout again in February 2016 (R.1243, 1246) and July 2016 (R.1216-18), which post-dates Cook's allegedly disabling injury from a dog attack in April 2014 (R.34-35) and alleged

disability onset date of July 31, 2014. The ALJ also noted that Cook apparently was able to perform some medium-to-heavy exertional activities, as he reported that he was loading rocks onto his vehicle when the Bowflex struck him in 2018. R.20 (citing December 2018 mental health record (R.1550)).

The ALJ then found that Cook could perform his past work as a bodyguard, as generally performed at a light level. R.22. The ALJ cited the vocational expert's testimony, which classified the job of "bodyguard" as a light exertional level job, according to DOT entry 372.667-014. R.51. Though Cook performed the job at a very heavy exertional level, the job responsibilities that demanded he be able to lift heavy weights were unique to that client— specifically, because that client required her bodyguards to bathe her 250-pound dogs. R.34. Cook testified that he could still lift 20 to 25 pounds, R.42, which is consistent with the regulations' parameters for "light work." 20 C.F.R. § 404.1567 ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

Accordingly, the ALJ's determinations about Cook's RFC and ability to find work available in the national economy were supported by substantial evidence in the record. Cook's attempt to highlight countervailing evidence that would favor finding additional impairments or limitations merely invites the Court to reweigh the evidence. The Court declines to do so and recommends the ALJ's decision be affirmed. *Brown,* 192 F.3d at 496.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. 15) be **GRANTED**, that Plaintiff's Motion for Summary Judgment (Dkt. 12) be **DENIED**, and that the ALJ's decision be **AFFIRMED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on January 24, 2023 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge